UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FLOWERHORN, INC. and HNJ GROUP, INC., | ) | |
| | ) | 19 C 2372 |
| Plaintiffs, | ) | |
| | ) | Judge Gary Feinerman |
| vs. | ) | |
| | ) | |
| HOT N JUICY CRAB TINLEY PARK, INC. and | ) | |
| HOT N JUICY CRAB INCORPORATED, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons and to the extent set forth below, Plaintiffs' emergency motion for a temporary restraining order [8] is granted in part and denied in part. Defendants shall remove all "#HotNJuicy" hashtags from their social media posts by 5/24/2019 and shall cease using the phrase "QUICKIE LUNCH DEAL" in their business by 6/3/2019. Enter temporary restraining order.

## STATEMENT

Plaintiffs seek a temporary restraining order ("TRO") directing Defendants to stop employing several marks in connection with their two restaurants: a circular logo employing the phrase "Hot n Juicy Crab"; the word marks "HOT n JUICY CRAB," "HOT n JUICY," "HNJC," "TWO HANDED PO' BOYS," and "QUICKIE LUNCH DEAL"; and the hashtag "#HotNJuicy." Doc. 8 at 5-6.

The motion is denied with respect to the circular logo and the word marks "HOT n JUICY CRAB," "HOT n JUICY," and "HNJC." On the present record, the balance of harms as to those marks tips sharply in Defendants' favor. The court accepts Defendants' submission that they could not effectively operate their restaurants without using the restaurants' name and that an order enjoining their use of those marks would force them to rebrand at a cost in the high five figures. Doc. 12-1. (Plaintiffs' suggestion at the motion hearing that Defendants be enjoined from using the marks only on outside signage does not remedy the problem, as restaurants with no outside signage or with a tarp thrown over outside signs would likely lose unsustainable numbers of customers, forcing a rebrand.) On the other side of the scale, Plaintiffs' restaurants are located no less than several hundred miles from the Chicago area, Plaintiffs have no concrete plans to expand into the Chicago area, Doc. 1 at ¶¶ 49-50, and Plaintiffs have thus far identified only five instances of customer confusion, Doc. 1 at 18-19; Doc. 1-12 at 2; Doc. 1-13 at 2; Doc. 1-14 at 2; Doc. 1-15 at 3. Given this, the court cannot conclude on the present record that the relevant factors, on balance, weigh in favor of the requested TRO. *See Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) ("In the balancing phase [of the injunctive relief analysis], the court weighs the irreparable harm that the moving party would endure without the

protection of the … injunction against any irreparable harm the nonmoving would suffer if the court were to grant the requested relief. In so doing, the court employs a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.") (internal quotation marks, alteration, and citation omitted).

The motion also is denied as to the word mark "TWO HANDED PO' BOYS." Plaintiffs offer no evidence to rebut Defendants' submission that the Two-Handed Po' Boy is an established type of sandwich served by many Louisiana-style restaurants. That fact, if true, reduces the likelihood that Plaintiffs will succeed in showing that the mark (which is not registered) has acquired secondary meaning. *See Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 728 (7th Cir. 1998) ("A mark acquires secondary meaning when it has been used so long and so *exclusively* by one company in association with its products or services in that particular industry that the [mark] has come to mean that those products or services are the company's trademark.") (emphasis added). Weighed in light of the relatively meager evidence that Defendants' use of this particular mark will harm Plaintiffs, the TRO factors, on balance, weigh against granting a TRO as to that mark.

The balance shifts with respect to the remaining marks. The similarities between Plaintiffs' and Defendants' "QUICKIE LUNCH DEAL," including the name, the menu items included in the deal, and the price, Doc. 1 at ¶¶ 17, 58, strongly suggest intentional copying, increasing the likelihood that Plaintiffs will succeed in establishing secondary meaning, *see Baig v. Coca-Cola Co.*, 607 F. App'x 557, 560 (7th Cir. 2015); *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1267 (7th Cir. 1989), and likelihood of confusion, *see Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). In addition, the cost to Defendants of renaming a single lunch special would be far less than the cost of rebranding the restaurants from top to bottom, so the parties' harms are more evenly balanced as to this mark than as to the other word marks.

The balance of harms is even more favorable to Plaintiffs as to Defendants' "#HotNJuicy" hashtag. The hashtag is far more likely than the other marks to cause customer confusion in the markets where Plaintiffs' restaurants are located, because regardless of where a user is when she clicks on the hashtag, she will receive results from both Plaintiffs' and Defendants' social media accounts. On the other side of the scale, Defendants acknowledged at the motion hearing that they could remove the hashtag at minimal cost.

On balance, then, the relevant factors favor a TRO enjoining Defendants from using the mark "QUICKIE LUNCH DEAL" and the hashtag "#HotNJuicy," and Plaintiffs motion accordingly is granted as to those two marks.

May 14, 2019

_____
United States District Judge